James Ambrose BROWN, Appellant,

v.

James P. MITCHELL, Superintendent of the Virginia State Penitentiary, Appellee.

No. 78–6444.

United States Court of Appeals, Fourth Circuit.

Argued Jan. 8, 1979.

Decided May 9, 1979.

Larry J. Ritchie, Washington, D. C. (Michael E. Geltner, Professor, Washington, D. C., Geoffrey W. Mangum, Third Year Law Student, Georgetown University Law Center on brief), for appellant.

Jim L. Chin, Asst. Atty. Gen., Richmond, Va. (Marshall Coleman, Atty. Gen. of Va., Richmond, Va., on brief), for appellee.

Before BUTZNER and RUSSELL, Circuit Judges, and FIELD, Senior Circuit Judge.

BUTZNER, Circuit Judge:

The sole issue in this appeal is whether *United States v. Mauro,* 436 U.S. 340, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978), applies to a state conviction that became final prior to the date when *Mauro* was decided.[1] Under

the Supreme Court's interpretation of the Interstate Agreement on Detainers in *Mauro,* the Commonwealth of Virginia tried James Ambrose Brown in violation of Article IV(e) of the Agreement. However, applying the controlling test of *Linkletter v. Walker,* 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965), and *Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), we conclude that *Mauro* does not apply retroactively and affirm the district court's denial of a writ of habeas corpus.

In *Mauro* the Supreme Court reviewed two decisions: *United States v. Mauro,* 544 F.2d 588 (2d Cir. 1976), and *United States v. Ford,* 550 F.2d 732 (2d Cir. 1977). In both cases the United States had obtained temporary custody of prisoners by writs of habeas corpus ad prosequendum. In *Ford,* but not in *Mauro,* the United States had filed a detainer before obtaining custody. The Second Circuit held that a writ of habeas corpus ad prosequendum was a "detainer" entitling the prisoner to the protection of the Agreement. Upon finding violations of the speedy trial provisions of the Agreement, the court dismissed both indictments. Drawing a sharp distinction between a prisoner subject to a detainer and one who was not, the Supreme Court affirmed the judgment of the court of appeals in *Ford* but reversed in *Mauro.* The Court held that the writ is not itself a "detainer" and therefore that it "does not trigger the application of the Agreement". It also held that the writ is a request for temporary custody which, when preceded by the lodging of a detainer, requires compliance with the Agreement. 436 U.S. at 349, 361–62, 98 S.Ct. at 1841.

The Supreme Court's decision enables a prisoner subject to a detainer whose custody has been obtained by a writ of habeas corpus ad prosequendum to invoke Article IV of the Agreement. Article IV(e) requires the receiving state[2] to try the pris-

---

1. The state has not challenged the appellant's right to raise this issue in a collateral proceeding under 28 U.S.C. § 2254. We find it unnecessary to consider the constitutional questions implicit in this issue because we conclude that *Mauro* should not be applied retroactively. *See*

*Bowen v. United States,* 422 U.S. 916, 920, 95 S.Ct. 2569, 45 L.Ed.2d 641 (1975).

2. Article II(c) of the Agreement defines "Receiving State" as "the State in which trial is to be had on an indictment, information, or complaint pursuant to article III or IV hereof."

oner before returning him to the state in which he was previously imprisoned and mandates dismissal of the charges with prejudice if the receiving state fails to comply.[3] Interstate Agreement on Detainers, 18 U.S.C. App. A, Article IV(e); Va. Code Ann. § 53–304.1, Article IV(e) (1978).

On March 14, 1976, when Brown was in federal custody in the District of Columbia awaiting trial on robbery charges, a detainer was filed against him based upon unrelated homicide charges then pending in Westmoreland County, Virginia. In July, 1976, Brown was convicted on the robbery charges and incarcerated at the District of Columbia reformatory in Lorton, Virginia.

On October 21, 1976, the Commonwealth of Virginia secured a writ of habeas corpus ad prosequendum from the state trial court in order to obtain temporary custody of Brown. Pursuant to that writ, the state transferred Brown from Lorton to Westmoreland County on October 28. A county grand jury indicted Brown for first-degree murder. At his arraignment he pled not guilty, counsel was appointed, and trial was set for December 22. The state promptly returned Brown to federal custody. On December 20, the court granted Brown's motion for a continuance, setting the trial for February 3, 1977.

On January 18, 1977, the state secured a second writ of habeas corpus ad prosequendum and obtained custody of Brown for a psychiatric examination ordered by the court at Brown's request. Following the examination, Brown was again returned to Lorton. On January 19, the state secured a third writ in order to obtain Brown's presence for trial.

The state trial court denied Brown's pretrial motion to dismiss the indictment on the ground that the previous transfers violated Article IV(e). On February 3, Brown was tried and convicted of first-degree murder. He again raised his Article IV(e) claim in a petition for a writ of error filed with the Supreme Court of Virginia. That court denied the writ without opinion.

Brown filed a petition for a writ of habeas corpus in the federal district court on January 20, 1978. The district court denied the writ because in its view the Interstate Agreement on Detainers did not apply. The court did not address the issue of *Mauro*'s retroactive application.

On appeal, Brown does not contend that the rights recognized in *Mauro* are themselves constitutionally protected.[4] He does, however, advance an argument based on the due process clause, contending that it would be fundamentally unfair to deny him the benefit of *Mauro*. He asserts that the indictment should be dismissed because *Mauro* precludes the state from trying him. He emphasizes that under *Mauro*'s construction of the Agreement, a state which follows the procedure that was used by Virginia in his case must dismiss the indictment with prejudice.

■ At the outset, we reject Brown's contentions that *Mauro* sets forth no new rule of law and that retroactivity is automatic. The threshold test for nonretroactivity analysis is set forth in *Chevron Oil Co. v. Huson*, 404 U.S. 97, 106, 92 S.Ct. 349, 355, 30 L.Ed.2d 296 (1971). In that case, the court explained: "[T]he decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, . . . or by deciding an issue of first impression whose resolution was not clearly foreshadowed . . . ."

---

3. Article IV(e) of the Agreement provides as follows:

> If trial is not had on any indictment, information, or complaint contemplated hereby prior to the prisoner's being returned to the original place of imprisonment . . . such indictment, information, or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice.

4. Other courts have held that the Agreement establishes procedural rules which do not rise to the level of constitutionally protected rights. *See, e. g., Camp v. United States*, 587 F.2d 397, 400 (8th Cir. 1978); *United States v. Palmer*, 574 F.2d 164, 167 (3d Cir. 1978); *Edwards v. United States*, 564 F.2d 652, 653–54 (2d Cir. 1977).

*Mauro* is such a decision. Prior to *Mauro*, three of the five courts of appeals that had considered the issue held that transfers pursuant to writs of habeas corpus ad prosequendum were not subject to the Interstate Agreement on Detainers. *See Ridgeway v. United States*, 558 F.2d 357 (6th Cir. 1977); *United States v. Kenaan*, 557 F.2d 912 (1st Cir. 1977); *United States v. Scallion*, 548 F.2d 1168 (5th Cir. 1977). The two courts of appeals which had found that the Agreement established rights of prisoners when the writ was utilized did so only over vigorous dissents. *See United States v. Sorrell*, 562 F.2d 227 (3d Cir. 1977) (en banc) (dissenting opinion of Weis, J., for himself and two other judges, and dissenting opinion of Garth, J., both appended to companion case of *United States v. Thompson*, 562 F.2d 232, 235–46 [3d Cir. 1977]); *United States v. Ford*, 550 F.2d at 744–45 (Moore, J., dissenting); *United States v. Mauro*, 544 F.2d at 595–97 (Mansfield, J., dissenting).

With the exception of the Second Circuit's holding in *Ford*, none of these decisions attributed dispositive significance to the presence or absence of a detainer. In addition, the Second Circuit's holdings in *Mauro* and *Ford* did not apply to situations in which temporary custody was obtained for arraignment and the prisoner was promptly returned. *See United States v. Chico*, 558 F.2d 1047 (2d Cir. 1977). The Third Circuit's holding in *Sorrell* apparently applies only to writs issued after the date of that decision. *United States v. Boyd*, 437 F.Supp. 519 (W.D.Pa.1977), *aff'd without opinion*, 578 F.2d 1376 (3d Cir. 1978).

We therefore conclude that *Mauro* authoritatively established a principle of law which "was not clearly foreshadowed." *See Chevron Oil*, 404 U.S. at 106, 92 S.Ct. 349. Accordingly, in order to prevail, Brown must satisfy the established requirements for retroactivity.

▪ In *Linkletter v. Walker*, 381 U.S. 618, 636–38, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965), and in *Stovall v. Denno*, 388 U.S. 293, 296–300, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), the Supreme Court held that four factors generally control the determination of whether a decision announcing a new principle of law is to be given retrospective effect:

> (1) the extent of reasonable reliance upon the premise that the now-condemned conduct was legitimate;

> (2) the purpose of the new rule and the extent to which that purpose will be aided by retroactivity;

> (3) the effect on the administration of justice of applying the new rule retroactively; and

> (4) the extent to which the new rule bears on the defendant's guilt or innocence.

Some cases, of course, do not fit neatly within this analytical scheme. Overriding constitutional policies that have nothing to do with the guilt or innocence of the defendant may compel retroactivity.[5] *Linkletter* and *Stovall*, nevertheless, set forth the basic test for nonretroactivity.

As our discussion of the state of the law prior to *Mauro* indicates, there was a reasonable basis for Virginia's reliance on the premise that use of a writ of habeas corpus ad prosequendum to obtain custody of a prisoner for pretrial proceedings does not trigger Article IV(e) of the Agreement.

The purpose of the rule announced by the Supreme Court in *Mauro* is the same as the purpose of the Interstate Agreement on Detainers: to encourage the prompt disposition of charges against a prisoner who is subject to a detainer and thereby to prevent frustration of rehabilitation efforts. This purpose would not be aided by applying *Mauro* to Brown's case. Virginia fully complied with the purpose of the rule announced in *Mauro*. Brown was tried 98 days after the state first obtained custody of him from the District of Columbia. Forty-three days of that period represent the continuance granted at Brown's request. This is well within the 120-day speedy trial

---

5. An example is the fifth amendment guarantee against double jeopardy. *See Robinson v. Neil*, 409 U.S. 505, 507–09, 93 S.Ct. 876, 35 L.Ed.2d 29 (1973).

period set forth in Article IV(c) of the Agreement.[6]

Retrospective application of the rule of *Mauro* would also have substantial disruptive effects upon the administration of justice. The Court's discussion of the history of the writ of habeas corpus ad prosequendum in *Carbo v. United States,* 364 U.S. 611, 81 S.Ct. 338, 5 L.Ed.2d 329 (1961), illustrates the relatively widespread reliance by prosecutors on use of the writ before trial. The divergent views on its relation to the Agreement on Detainers, which we have previously mentioned, have doubtless produced many cases involving the use of both a detainer and a writ.

Finally, Virginia's use of the procedure now condemned in *Mauro* does not impugn the reliability of Brown's conviction. There is no evidence that returning Brown to Lorton prejudiced his defense. All four *Linkletter-Stovall* factors therefore compel nonretroactivity.

Brown contends that regardless of the *Linkletter-Stovall* factors, we must reverse his conviction. He emphasizes that under *Mauro*'s interpretation of the Agreement, Virginia would have been precluded from trying him at all. He relies on *Robinson v. Neil,* 409 U.S. 505, 93 S.Ct. 876, 35 L.Ed.2d 29 (1973). In *Robinson,* the Court ordered retroactivity of its holding in *Waller v. Florida,* 397 U.S. 387, 90 S.Ct. 1184, 25 L.Ed.2d 435 (1970), that the double jeopardy clause bars successive state and municipal prosecutions based on the same act or offense. The Court did so despite the fact that truth-finding was not implicated. Brown argues that Article IV(e) and *Mauro* are analogous to the double jeopardy clause and *Waller,* respectively, because both Article IV(e) and the double jeopardy clause prevent certain trials from taking place at all.

The Supreme Court, however, carefully limited *Robinson,* noting that the

guarantee against double jeopardy is "significantly different" from other new procedural guarantees which are generally nonretroactive. *See* 409 U.S. at 509, 93 S.Ct. 876; *see also United States v. Bowen,* 500 F.2d 960, 979 (9th Cir. 1974), *aff'd,* 422 U.S. 916, 95 S.Ct. 2569, 45 L.Ed.2d 641 (1975). The values protected by the double jeopardy clause are indeed different from those protected by the Agreement. The guarantee against double jeopardy is directed at the evil of a second trial in and of itself. In contrast, the purpose of the Article IV(e) restriction on prosecutions is to insure prompt disposition of detainers. As we have demonstrated, Virginia's conduct in relation to Brown was fully consistent with this purpose.

Accordingly, Brown is not entitled to retrospective application of *Mauro.* The judgment of the district court is affirmed.

---

**6.** Article IV(c) of the Agreement provides:

In respect of any proceeding made possible by this article, trial shall be commenced within one hundred and twenty days of the arrival of the prisoner in the receiving State, but for

good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance.