**Thompson B. HAWKINS-EL,**

v.

**Ralph L. WILLIAMS, Warden.**

**Civ. No. K-78-606.**

United States District Court,
D. Maryland.

Dec. 28, 1979.

Joseph M. Fairbanks, and Joshua R. Treem, Baltimore, Md., for plaintiff.*

Stephen H. Sachs, Atty. Gen., and Diane G. Goldsmith, Asst. Atty. Gen., Baltimore, Md., for defendant.

FRANK A. KAUFMAN, District Judge.

This case presents the question of whether the State of Maryland violated the Interstate Agreement on Detainers when, on three occasions in 1972–73, it brought plaintiff, Hawkins-El, to Maryland pursuant to three writs of habeas corpus ad prosequendum and returned him, each time without having tried him, on the same day to his place of imprisonment in the District of Columbia where a detainer had been lodged against Hawkins-El prior to the issuance of the first said writ.

Hawkins-El is presently confined in the Maryland Penitentiary. Herein he seeks habeas corpus relief in this Court for the seventh time.[1] On October 18, 1973, after a jury trial in the Circuit Court for Prince George's County, Maryland, presided over by Judge Roscoe H. Parker, Hawkins-El was found guilty under one count of rape and two counts of false imprisonment. On November 19, 1973, Judge Parker denied Hawkins-El's motion for a new trial and sentenced him to a term of confinement of 21 years on the rape count and to consecutive terms of confinement of 5 years on each of the two counts of false imprisonment, both said 5 year sentences to be served consecutively to the 21 year rape sentence, making a total combined sentence of 31 years. On February 22, 1974, a three-judge sentence review panel reduced Hawkins-El's rape sentence to a term of 15 years and ordered one of his sentences for false imprisonment to run concurrently with the rape sentence. Thus, the total of the reduced sentences was 20 years. On July 29, 1974, Hawkins-El's conviction was affirmed by the Court of Special Appeals of Maryland. Certiorari was subsequently denied by the Court of Appeals of Maryland on October 24, 1974.

In his petition for habeas corpus relief currently before this Court, plaintiff claims certain violations of the Interstate Agreement on Detainers, which is set forth in Article 27, §§ 616A–R of the Annotated Code of Maryland. Hawkins-El states in an affidavit filed on December 28, 1978 that he is not seeking to raise claims previously raised in Civil Numbers K–74–550, K–75–300, K–76–499, and K–76–1671.[2] The allegations herein are similar to those previously raised in K–77–1076, which was dismissed by this Court for failure to exhaust state remedies. Those state remedies have now been exhausted.[3]

Defendant urges that plaintiff is barred from raising his Interstate Agreement on Detainers (hereinafter "IAD") claims in this Court in view of his earlier failure to raise those claims. In response plaintiff claims that counsel misinformed or failed to inform him of his rights under the IAD,

---

* This Court is most appreciative of the very capable services performed by Messrs. Fairbanks and Treem as court-appointed counsel for Hawkins-El.

1. Civil Nos. K–74–550, *app. dism'd*, No. 74–8153 (4th Cir. Feb. 26, 1975), K–74–1088, K–75–300, and K–77–1076, *app. dism'd*, No. 78–8049 (4th Cir. May 9, 1978) were dismissed by this Court for failure to exhaust state remedies. Civil No. K–76–499 was withdrawn by Hawkins-El. In K–76–1671, *app. dism'd*, No. 77–8151 (4th Cir. July 12, 1977), habeas corpus relief was denied. Hawkins-El has also sought 1983 relief in several other cases.

2. Civil No. K–74–1088 is not mentioned by plaintiff in that affidavit. However, that case has no bearing upon this litigation.

3. *Hawkins v. Collins*, Law No. 67,935 (Cir.Ct. Prince George's County, February 16, 1978) (Meloy, J.), *leave to appeal denied*, No. 7 (Ct. Sp.App., 1978) (per curiam).

causing his failure to raise the IAD claims in earlier post-conviction proceedings in state and federal court, and that said alleged ineffective assistance of counsel excuses any earlier failure by him, and prevents him from being barred herein by the doctrine of waiver.

It is not necessary herein to reach the issues of ineffective assistance of counsel and waiver, since even if it is assumed, *arguendo* only, that plaintiff received ineffective assistance of counsel and that plaintiff has not waived any of his rights, plaintiff's within petition fails on the merits.

The basic facts are not in dispute. On December 7, 1972, Hawkins-El was indicted by a Grand Jury of the Circuit Court for Prince George's County. On December 7, 1972, a bench warrant was issued for Hawkins-El's arrest. On that date Hawkins-El was serving a term of incarceration in the District of Columbia jail. On December 11, 1972, the Sheriff's Office of Prince George's County lodged a detainer against Hawkins-El with the District of Columbia prison authorities. On December 12, 1972, a petition for a writ of habeas corpus ad prosequendum was filed in the Circuit Court for Prince George's County and was granted by that Court. On December 21, 1972, Hawkins-El was taken from the District of Columbia Jail to Prince George's County for arraignment, where he pled not guilty in the absence of counsel. The case was referred to the Prince George's County public defender. Hawkins-El was returned to the District of Columbia jail on the same day.

On January 9, 1973, trial was set for February 7, 1973. On January 25, 1973, a Petition, and subsequently an Order, for a writ of habeas corpus ad prosequendum, were filed in the Circuit Court of Prince George's County. On February 5, 1973, a Motion for Continuance was filed in that Court by the State of Maryland and was subsequently granted by the court. Hawkins-El did not oppose that continuance. At the same time as the continuance was granted, a new trial date, March 22, 1973, was set. Hawkins-El never left the District of Columbia jail pursuant to the January 25, 1973 writ, and was not present when the continuance was granted. On February 13, 1973, a notice setting trial for March 22, 1973 was filed.

On March 2, 1973, a discovery motion was filed in the Prince George's County case. On March 12, 1973 a Petition and Order for a writ of habeas corpus ad prosequendum were filed. On March 21, 1973, Hawkins-El and the State joined in a motion for a continuance. That motion was granted on March 22, 1973. Hawkins-El was taken from the District of Columbia to Prince George's County on March 22, 1973 and returned to the District of Columbia on that same day. Hawkins-El was present when the continuance was granted.[4]

On March 27, 1973, the Circuit Court for Prince George's County calendared the trial of the case to commence on May 16, 1973. On May 3, 1973, a Petition and an Order for a writ of habeas corpus ad prosequendum were issued. On May 16, 1973, Hawkins-El entered a plea of not guilty by reason of insanity. He was taken from and returned to the District of Columbia on May 16, 1973.[5] On June 7, 1973, the Prince George's

---

4. The pleadings filed in this case reflect some confusion about whether the continuance was granted on March 21, 1973 or on March 22, 1973. The docket entries in the case of *State of Maryland v. Hawkins,* Criminal No. 12,784 show that the continuance was granted on March 22, 1973. The Order granting the continuance was apparently signed on March 21, 1973. Seemingly, Hawkins-El was taken from the District of Columbia and returned to the District of Columbia on March 22, 1973. According to Hawkins-El, he was present when the motion for the continuance was "filed and granted in open court." Letter of August 7, 1979 from counsel for plaintiff to this Court, ¶ 3; **Memorandum of Law Re: Applicability of**

Brown v. Mitchell; 598 F.2d 835 (4th Cir. 1979), filed by petitioner on August 6, 1979 at page 2 of that Memorandum. The memorandum of Hawkins-El of August 6, 1979 raises doubt as to whether Hawkins-El appeared in court in Prince George's County on March 21, 1973 or March 22, 1973. However, whether or not the continuance was granted on March 21, or March 22 does not affect the result herein: it is undisputed that Hawkins-El was present when the continuance was granted in open court and that he was taken from the District of Columbia jail and returned thereto on the same day.

5. Counsel for Hawkins-El indicates that the delays in trial date after May 16, 1973 "related to

County court ordered a mental examination for Hawkins-El. On June 13, 1973, a letter from Clifton T. Perkins State Hospital was received by the Court. On June 14, 1973, a Petition and Order for a writ of habeas corpus ad prosequendum were filed, and on July 2, 1973, Hawkins-El's plea of insanity was withdrawn. The June 14, 1973 writ was never executed, as Hawkins-El was released from the District of Columbia jail, seemingly on May 31, 1973.[6]

On July 12, 1973, there was a return "Cepi"[7] filed as to Hawkins-El. Also, on July 12, 1973, a Petition for Extension of Time to move or otherwise plead, an Order to Show Cause and a Motion to Dismiss the Indictment with Prejudice were filed by Hawkins-El.[8] On July 18, 1973 a Motion for Reduction of Bond was filed by Hawkins-El. On July 19, 1973, the trial was set for September 6, 1973. On September 4, 1973, the State moved for a continuance. That continuance was granted over the opposition of Hawkins-El.[9] On September 6, 1973, and on October 3, 1973, petitions and orders for writs of habeas corpus ad prosequendum were filed.[10] Trial was held on October 17, 1973.

The above facts show that on three occasions—December 21, 1972, March 22, 1973, and May 16, 1973—Hawkins-El was brought from the District of Columbia Jail to Prince George's County pursuant to writs of habeas corpus ad prosequendum. He was returned to the District of Columbia Jail each time on the same day.

As enacted by the General Assembly of Maryland, Article IV of the Interstate Agreement on Detainers is set forth in Md. Code Ann. Article 27, Section 616E. Section 616E(c) (Article IV(c)) provides, in relevant part, that "trial shall be commenced within one hundred twenty days of the arrival of the prisoner in the receiving state, but for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance."

Article IV(e), Art. 27 Md.Code Ann. § 616E(e) provides:

*Dismissal of indictment, etc., on which no trial had.*—If trial is not had on any indictment, information or complaint contemplated hereby prior to the prisoner's being returned to the original place of imprisonment pursuant to Article V(e) hereof, such indictment, information or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice.

Article V(e), Article 27 Md.Code Ann. § 616F(e), provides:

*Return of prisoner to sending state.*—At the earliest practicable time consonant with the purposes of this agreement, the prisoner shall be returned to the sending state.

Hawkins-El claims that the IAD was violated by his removal from the District of Columbia Jail and his return thereto without being tried on each of the three occa-

---

Hawkins' plea of insanity and related subsequent motion." Memorandum of Law Re: Applicability of Brown v. Mitchell, etc., filed August 6, 1979, at 3 note 2. It should be noted, however, that Hawkins-El opposed the September 4, 1973 continuance.

6. The record is not entirely clear in that regard. In a letter of August 7, 1979 from counsel for Hawkins-El to this Court, the date of May 31, 1973 is given as the date on which Hawkins-El was released from the District of Columbia jail. However, it appears clear, in any event, that Hawkins-El was released from the District of Columbia jail not later than August 1973.

7. Black's Law Dictionary (4th Ed. 1951) states, in part, as follows: "CEPI. Lat. I have taken. * * *" If Hawkins-El was taken into the

custody of Prince George's County on July 12, 1973, it would fit in with the July 18, 1973 date upon which Hawkins-El filed a motion for reduction of bond.

8. *See* Note 5, *supra.*

9. *But see* Petitioner's Memorandum of Law Re: Applicability of Brown v. Mitchell, etc., filed August 6, 1979, at 3 note 2, wherein counsel for Hawkins-El notes that delays in trial after May 16, 1973 were due to Hawkins-El's plea alterations.

10. Those writs are not in issue herein, since at the time they were issued Hawkins-El was no longer in the District of Columbia.

sions mentioned above, since the detainer had been filed prior to any of those occasions. He contends that the recent decision in *United States v. Mauro*, 436 U.S. 340, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978),[11] supports that argument, and urges that because a detainer was lodged against him prior to his removals from the District of Columbia Jail pursuant to writs of habeas corpus ad prosequendum, his returns to the District of Columbia Jail before he was tried in the Circuit Court for Prince George's County violated IV(e) of the IAD, and entitled him to have the indictment against him in the Circuit Court for Prince George's County dismissed with prejudice.

In *Mauro*, the Supreme Court held that "a writ [of habeas corpus ad prosequendum] issued by a federal court to state authorities * * * is not a detainer within the meaning of the [Interstate] Agreement [on Detainers] and thus does not trigger the application of the Agreement." 436 U.S. at 349, 98 S.Ct. at 1837–38. However, the Court also held that the "United States is bound by the Agreement when it activates its provisions by filing a detainer against a state prisoner and then obtains his custody by means of a writ of habeas corpus ad prosequendum." *Id.*

In the within case, it is undisputed that a detainer had been filed. by Maryland with the District of Columbia prison officials prior to the issuance of the writs of habeas corpus ad prosequendum, and prior to the three occasions upon which the plaintiff was brought to Maryland pursuant to those writs. The question therefore is presented herein as to whether the rule of *Mauro* applies retroactively to a state conviction which became final prior to the date of the Supreme Court's decision in *Mauro*.[12]

Prior to *Mauro*, three of the five courts of appeals that had considered the issue held that transfers pursuant to writs of habeas corpus ad prosequendum were not subject to the Interstate Agreement on Detainers. * * *

* * * * * *

With the exception of the Second Circuit's holding in Ford [*United States v. Ford*, 550 F.2d 732 (2d Cir. 1977), aff'd 436 U.S. 340, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978)], none of these decisions attributed dispositive significance to the presence or absence of a detainer. * * *

*Brown v. Mitchell*, 598 F.2d 835, 838 (4th Cir. 1979). In *Boone v. United States*, Civil No. H–77–1674 (D.Md. April 24, 1978),[13] aff'd, 610 F.2d 814 (4th Cir. 1979), Boone contended that Article IV(e) of the Interstate Agreement on Detainers required the dismissal of the two federal indictments "because [he,] petitioner[,] was returned from federal to state custody on several occasions following his preliminary appearance, arraignment, motions hearing, rearraignment, and sentencing in this Court." Slip op. at 1.[14] A detainer had been filed against Boone prior to his temporary trans-

---

**11.** The within petition currently before this Court was filed on April 10, 1978, prior to the Supreme Court's decision in *Mauro*, which was handed down on May 23, 1978. The opinion of the United States Court of Appeals for the Second Circuit, which the Supreme Court reversed in *Mauro*, was handed down in 1976, 544 F.2d 588 (2d Cir. 1976). Hawkins-El was tried in the Circuit Court for Prince George's County in October of 1973, before either of said decisions in the *Mauro* case was rendered.

**12.** In *State v. Boone*, 40 Md.App. 41, 388 A.2d 150 (1978), Judge Thompson, writing for the Court of Special Appeals of Maryland, held that a writ of habeas corpus ad prosequendum is not in itself a detainer. *Id.* at 46, 388 A.2d 150. The Court specifically noted that it was following *Mauro* in that regard. *Id.* Herein, this Court assumes *arguendo* only that the

Maryland courts would adopt the total approach of *Mauro* and hold that the issuance of such a writ following a detainer triggers the IAD. However, the question herein posed is not whether the Maryland courts would adopt that approach, but rather whether the same, as set forth in *Mauro*, should be applied retroactively.

**13.** A copy of Judge Harvey's Memorandum and Order in that case has been placed in the Court File of the within case.

**14.** The version of Article IV(e) of the IAD passed by the federal government is identical to Article IV(e) (§ 616E(e)) of the Maryland IAD. *See* p. 418 *supra.* The federal IAD is codified in 18 U.S.C.App.

fers from state to federal custody. Those transfers were accomplished by means of writs of habeas corpus ad prosequendum issued by this Court. Judge Harvey, writing before *Mauro* was decided by the Supreme Court, stated:

> In *Robinson v. Spurrier*, Civil No. 77–1610 (4th Cir. May 6, 1977), Judge Winter of the Fourth Circuit followed the holding of the Fifth Circuit in *United States v. Scallion* [548 F.2d 1168 (5th Cir. 1977)], in denying an application for a writ of habeas corpus. Thus, the law of this Circuit is that the Interstate Agreement on Detainers does *not* apply to the transfer of a prisoner pursuant to a writ of *habeas corpus ad prosequendum.* * *

Slip op. at 4. The fact that a detainer had been filed prior to the use of the writs had no impact whatever on Judge Harvey's decision: that fact was not even mentioned. While Judge Harvey was construing the federal version of the Interstate Agreement on Detainers, and not the Maryland version, there is nothing to indicate that the Maryland state courts would have approached the question differently from the federal courts.[15] Thus, prior to *Mauro*, the fact that a detainer had been filed prior to a temporary transfer pursuant to a writ of habeas corpus ad prosequendum would not have triggered the application of Article IV(e) of the IAD in the State of Maryland.

Hawkins-El was convicted in Prince George's County on October 18, 1973. *Mauro* was decided on May 23, 1978. While no Maryland state court has to date dealt with the question of whether *Mauro* should be applied retroactively, the United States Court of Appeals for the Fourth Circuit has spoken on that issue, and there is no reason to believe that the Court of Appeals of Maryland would decide otherwise.

In *Brown v. Mitchell*, 598 F.2d 835 (4th Cir. 1979), the Fourth Circuit held that *Mauro* should not be applied retroactively. In that case a detainer had been filed against Brown by the State of Virginia on March 14, 1976. Before Brown was tried on February 3, 1977, he was twice removed from the custody of the District of Columbia to the custody of the State of Virginia and returned to the custody of the District of Columbia. Both such removals were pursuant to writs of habeas corpus ad prosequendum. On neither occasion was Brown tried before he was returned to the District of Columbia. Prior to his trial, Brown moved for a dismissal of the indictment pursuant to Article IV(e) of the IAD. That motion was denied.

Judge Butzner affirmed the district court's denial of habeas corpus relief, concluding that "*Mauro* authoritatively established a principle of law which 'was not clearly foreshadowed.' [Citation omitted.]" *Id.* at 838. Thus, the Court concluded, *Mauro* should not be applied retroactively.

The *Brown* decision that *Mauro* should not be applied retroactively governs this Court's action in the within case. *Mauro* established a new principle of law. Case law prior to *Mauro* had approved the type of procedure followed by the State of Maryland in the within case, and had established that the use of a writ of habeas corpus ad prosequendum to obtain temporary custody of a prisoner such as Hawkins-El did not violate Article IV(e), even though a detainer had previously been filed. Accordingly, the provisions of the IAD which Hawkins-El presently seeks to invoke herein simply were not applicable on the facts here in question prior to *Mauro*.

Even if *Mauro* were to be applied retroactively, that would not necessarily mean that Article IV(e) would afford Hawkins-El the relief he seeks herein. In *United States v. Chico*, 558 F.2d 1047 (2d Cir. 1977), *cert. denied*, 436 U.S. 947, 98 S.Ct. 2850, 56 L.Ed.2d 788 (1978), the Court found that removal of two prisoners from the jurisdiction in which they were imprisoned to a receiving state pursuant to writs of habeas corpus ad prosequendum did not trigger the application of Article IV(e) of the IAD where the removal only involved a few

---

**15.** Prior to *Mauro*, all the decisions in the Maryland state courts construing the IAD seemingly dealt with its speedy trial aspects, and not Article IV(e).

hours. At the time that *Chico* was decided, the law in the Second Circuit was that a writ of habeas corpus ad prosequendum was a detainer for purposes of application of the IAD: *United States v. Mauro*, 544 F.2d 588 (2d Cir. 1976) had not yet been reversed by the Supreme Court. The Second Circuit in *Chico* noted that:

> [t]he sole issue in this case is whether Article IV(e) must be interpreted as requiring that, where the United States obtains custody of a state prisoner pursuant to a writ of habeas corpus for a short, discrete appearance in a federal criminal, proceeding against him and returns him on the same day to the same state institution whence he was taken instead of holding him in another place of imprisonment until trial of the federal charges is completed, the indictment against him must be dismissed. Appellants contend that Article IV(e) requires dismissal of the federal indictment. We disagree.

558 F.2d at 1048. After commenting that the prisoners in *Chico* were "merely removed for a few hours at a time and immediately returned," *id.* at 1049, the Second Circuit held (at 1049):

> Article IV(e) of the [IAD] does not apply to a case where a prisoner is removed from the prison of a state for a few hours to be arraigned, plead and be sentenced in the federal court without ever being held at any place of imprisonment other than that of the sending state and with-

out interruption of his rehabilitation there. [Footnote omitted.]

As in *Chico*, plaintiff herein was removed from the District of Columbia and returned thereto on the same day on the three occasions of which he complains herein. If the *Chico* decision constitutes sound law, plaintiff may not prevail herein even if *Mauro* should be retroactively applied. *Chico* was cited favorably in the Fourth Circuit in *Brown v. Mitchell, supra*, as support for the proposition that "the Second Circuit's holdings in *Mauro* and *Ford* did not apply to situations in which temporary custody was obtained for arraignment and the prisoner was promptly returned." 598 F.2d at 838. On balance, if necessary—that is if *Mauro* were retroactive, which it is not—this Court would follow *Chico* herein. Judge Harvey reached that same view in *Boone* (slip op. at pp. 4–5).

In both *Chico* and *Brown* the guilty pleas and trials, respectively, were commenced within the 120 day period specified in Article IV(c) of the IAD. As far as Article IV(e) is concerned, the fact that trial in Hawkins-El's case was not commenced within 120 days of the issuance of the first writ does not make *Chico* and *Brown* inapplicable herein.[16] Further, even if the 120 day rule was violated, Hawkins-El may not prevail herein under Article IV(c). To begin with, Hawkins-El himself does not claim violation of the 120 day rule of Article IV(c) as a basis for relief and seemingly has not raised and exhausted that claim in

---

16. Trial in this matter would have commenced well within the 120 days prescribed in the IAD if it had not been for the continuances requested and granted in the case. The continuance which moved the trial date beyond the 120 day limit was the continuance granted on March 22, 1973. The petition for that continuance was joined in by Hawkins-El. Pursuant to that continuance, trial was set for May 16, 1973. On that date, Hawkins-El entered a plea of insanity. Hawkins-El concedes that the trial delays after May 16, 1973 were due to that plea. In that context it is important to note Article VI(a) of the IAD which provides:

> [i]n determining the duration and expiration dates of the time periods provided in Articles III and IV of this agreement, the running of said time periods shall be tolled whenever

and for as long as the prisoner is unable to stand trial * * *.

On May 16, 1973, the State was ready to go to trial, as it noted in its September 4, 1973 motion for a continuance. It was Hawkins-El's plea of insanity which forestalled trial on May 16, 1973.

The sole continuance opposed by Hawkins-El was the continuance granted on September 4, 1973. The passage of time between December 12, 1972, the date the first writ was issued and March 22, 1973 plus the passage of time between September 4, 1973 and October 17, 1973, the date trial commenced, exceeded, in total, 120 days. However, even that possible fact provides no basis for habeas corpus relief herein for the reasons set forth *infra* in the body of this opinion, at pp. 421–422.

any court of the State of Maryland.[17] The sole claim presented herein is that Hawkins-El, pursuant to Article IV(e), should have been tried prior to being returned to the District of Columbia. Also, even if the State of Maryland did cause the delay in trial by requesting continuances extending beyond 120 days, *Brown's* holding that *Mauro* is not retroactive precludes Article IV(c) relief in this case, since prior to the Supreme Court's opinion in *Mauro*, an appearance pursuant to a writ of habeas corpus ad prosequendum was not viewed by the Fourth Circuit as a "proceeding made possible by [the IAD]." Prior to *Mauro*, a writ of habeas corpus ad prosequendum was not deemed to invoke the IAD, whether or not a detainer had previously been lodged against the defendant.[18] Thus, the use of such a writ did not, prior to *Mauro*, start the 120 day time limit of Article IV(c) running.

For all the foregoing reasons,[19] the petition of Hawkins-El for habeas corpus relief will be denied.

---

17. *Cf.* p. 416, n.3 *supra.*

18. *See* the discussion *supra* at pp. 419–420.

19. It is not necessary herein to reach the question of whether the alleged violation of the IAD can be raised in a habeas corpus proceeding. *See Brown v. Mitchell supra* at 836, n.1, n.4.