Joseph Herbert MARS,
Petitioner-Appellant,

v.

UNITED STATES of America,
Respondent-Appellee.

No. 79–5043.

United States Court of Appeals,
Sixth Circuit.

Argued June 15, 1979.

Decided Jan. 31, 1980.

Rehearing and Rehearing En Banc
Denied April 7, 1980.

Kenneth R. Sasse, Detroit, Mich., for petitioner-appellant.

James K. Robinson, U. S. Atty., Francis L. Zebot, Detroit, Mich., for respondent-appellee.

Before EDWARDS, Chief Circuit Judge, and CELEBREZZE and MERRITT, Circuit Judges.

CELEBREZZE, Circuit Judge.

This case is before the court on appeal from a judgment entered by the district court after remand denying appellant's petition for relief from judgment pursuant to 28 U.S.C. § 2255. 463 F.Supp. 87 (E.D.Mich. 1978). On September 26, 1975 appellant Joseph H. Mars was convicted of bank robbery in violation of 18 U.S.C. § 2113(a) and received a ten year prison term to run consecutively with a six-month term for criminal contempt.[1] The issues presented for appellate review are three: whether a violation of the Interstate Agreement on Detainers Act[2] [hereinafter IAD or Act] is cognizable under 28 U.S.C. § 2255; whether appellant's failure to raise his IAD claim prior to or during trial constitutes a waiver of any claim for relief under the Act; and whether the Supreme Court's decision in *United States v. Mauro*, 436 U.S. 340, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978), should receive retroactive application to the facts

1. Mars was found guilty of criminal contempt for his refusal to obey a court order directing him to produce a handwriting exemplar.

2. 18 U.S.C. App. § 2.

of the instant case. For the reasons stated below, we affirm.

## I. Factual Background

Mars was indicted on July 16, 1975, in the Eastern District of Michigan for bank robbery in violation of 18 U.S.C. § 2113(a). At the time of his indictment Mars was serving a two-fifteen year prison term pursuant to a state conviction for armed robbery. Prior to his federal indictment the Government had directed to state correctional facility officials a detainer against Mars.

On July 24, 1975 Mars was taken into federal custody pursuant to a writ of habeas corpus *ad prosequendum*. On July 31, 1975 Mars was returned to state custody without having been tried on his federal charges. A subsequent *ad prosequendum* writ issued on September 11, 1975, and Mars was again taken into federal custody. After being tried and convicted on his federal indictment Mars was returned to state custody on August 1, 1975.[3] This court affirmed Mars' conviction on February 23, 1977. 551 F.2d 711 (6th Cir. 1977).

On January 21, 1977, Mars petitioned the district court for relief pursuant to 28 U.S.C. § 2255, and alleged, for the first time, that the Government had violated Article IV(e)[4] of the IAD by removing him from and returning him to state custody without proceeding to trial on the federal charges.[5] Initially, the district court denied Mars' petition because it concluded that the writ of habeas corpus *ad prosequendum* was not a "written request for temporary custody or availability" within the meaning of Art. IV(e) and therefore did not trigger that provision's sanctions. Mars appealed to this court, and we remanded the case to the district court for reconsideration in light of the Supreme Court's decision in *United States v. Mauro*, 436 U.S. 340, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978).[6]

On remand the district court again denied appellant's motion for relief. The court held that the *Mauro* decision should not be accorded retroactive effect and even if it was retroactively applied, Mars had effectively waived any IAD claim by failing to raise his objection prior to or during trial.[7] This appeal followed.

## II. Discussion

In *United States v. Mauro*, 436 U.S. 340, 98 S.Ct. 1834, 56 L.Ed.2d 329, the Supreme Court held that

**3.** Mars was again taken into federal custody on December 3, 1975, for sentencing, and the district court imposed a ten and one-half year term of imprisonment. Thereafter, Mars was returned to Ionia State Reformatory.

**4.** Art. IV of the IAD provides in pertinent part:
(e) If trial is not had on any indictment, information, or complaint contemplated hereby prior to the prisoner's being returned to the original place of imprisonment pursuant to article V(e), hereof, such indictment, information, or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice.

**5.** Appellant also alleged the Government violated Art. IV(c) of the Act claiming the Government failed to commence his trial within 120 days of his arrival into federal custody. The district court determined on remand that Mars had been tried within 120 days of his arrival into federal custody and that Art. IV(c) was not violated. This issue was not vigorously argued on appeal by appellant. Regardless of appellant's fervor in arguing this basis for relief, the following discussion concerning Art. IV(e) is equally applicable to appellant's Art. IV(c) allegations.

**6.** *United States v. Mauro*, 436 U.S. 340, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978), was decided while this case was pending its first appeal. The *Mauro* decision specifically undercut the validity of the primary basis for the district court's denial of relief. A remand was necessary to determine three basic issues: whether *Mauro* should be applied retroactively; whether Section 2255 is an appropriate means to raise IAD claims; and whether Mars waived any of his IAD claims.

**7.** The district court did not decide the particular issue of whether § 2255 is an appropriate way to raise an IAD claim. The district court held that our remand had effectively foreclosed a negative answer reasoning if we believed § 2255 was an inappropriate vehicle for relief we would never have remanded the case. That conclusion was erroneous. We remanded the case with specific instructions to decide the cognizability issue and our purpose was, in accordance with established appellate practice, to have that issue decided initially in the district court.

[o]nce the Federal Government lodges a detainer against a prisoner with state prison officials, the Agreement by its express terms becomes applicable and the United States must comply with its provisions. And once a detainer has been lodged, the United States had precipitated the very problems with which the Agreement is concerned. Because at that point the policies underlying the Agreement are fully implicated, we see no reason to give an unduly restrictive meaning to the term "written request for temporary custody." It matters not whether the Government presents the prison authorities in the sending State with a piece of paper labeled "request for temporary custody" or with a writ of habeas corpus *ad prosequendum* demanding the prisoner's presence in federal court on a certain day; in either case the United States is able to obtain temporary custody of the prisoner. Because the detainer remains lodged against the prisoner until the underlying charges are finally resolved, the Agreement requires that the disposition be speedy and that it be obtained before the prisoner is returned to the sending State. The fact that the prisoner is brought before the District Court by means of a writ of habeas corpus *ad prosequendum* in no way reduces the need for this prompt disposition of the charges underlying the detainer. In this situation it clearly would permit the United States to circumvent its obligations under the Agreement to hold that an *ad prosequendum* writ may not be considered a written request for temporary custody.

*Id.* at 361–62, 98 S.Ct. at 1848 (footnote omitted).

In light of the detainer which had been lodged against Mars, his subsequent removal from state custody pursuant to an *ad prosequendum* writ, and his return to state custody without having been tried on his federal charges, if the decision in *United States v. Mauro, supra,* is given retroactive effect, the Government indeed violated Art. IV(e) of the Act.

Our initial inquiry must be whether Mars' prayer for relief based on the Government's violation of the IAD is cognizable under § 2255. Section 2255 entitles a prisoner incarcerated pursuant to a federal judgment of conviction to post-conviction relief on four grounds: the sentence imposed violates the constitution or laws of the United States; the court that entered the judgment of conviction lacked jurisdiction to do so; the sentence exceeds the maximum authorized by law; or the sentence "is otherwise subject to collateral attack." *Hill v. United States,* 368 U.S. 424, 426–27, 82 S.Ct. 468, 470, 7 L.Ed.2d 417 (1962); *Huff v. United States,* 599 F.2d 860, 863 (8th Cir. 1979).

The present case does not involve a claim of a constitutional violation nor is there any doubt that the trial court possessed jurisdiction over the appellant and the crime involved.[8] Thus, Mars' § 2255 claim for relief must rest upon the allegation that his conviction was in violation of the "laws of the United States," *viz.,* in violation of the IAD, or "is otherwise subject to collateral attack."

In *Davis v. United States,* 417 U.S. 333, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974), the Supreme Court stated that not every asserted error of law can be raised on a motion for § 2255 relief. In *Davis* the Court articulated the appropriate inquiry for determining when an asserted error of law may form the basis for § 2255 relief. We must determine whether the error was " 'a fundamental defect which inherently results in a complete miscarriage of justice' and whether '[i]t . . . present[s] exceptional circumstances where the need for the remedy afforded by the writ of *habeas corpus* is apparent.' " *Id.* at 346, 94 S.Ct. at

---

**8.** The dissent seems to suggest that a violation of the IAD is jurisdictional and deprives a trial court of any power to proceed with criminal proceedings on the indictment. Our decision in *United States v. Eaddy,* 595 F.2d 341, 346 (6th Cir. 1979), specifically held to the contrary, and stated "[n]either does a violation of Article IV automatically strip the trial court of subject matter jurisdiction over the underlying criminal charges upon which the detainer was lodged."

2305, *quoting Hill v. United States*, 368 U.S. 424, 428, 82 S.Ct. 468, 471, 7 L.Ed.2d 417 (1962). *Accord, United States v. Timmreck*, 441 U.S. 780, 99 S.Ct. 2085, 60 L.Ed.2d 634 (1979).

▆ In our view appellant's instant claim for relief does not rise to the level of seriousness justifying § 2255 relief. The IAD provides prisoners charged with criminal offenses with important protections concerning the timing and notice of various proceedings against them. The violation of the IAD protection asserted by Mars, *viz.*, that he was not returned to state custody without having been first tried on his federal charges, falls far short of a "fundamental defect" causing a "complete miscarriage of justice" or of "exceptional circumstances" that might justify § 2255 relief. Appellant has failed to display how the Government's violation of the IAD has in any way affected or impugned the integrity of the fact finding process at his trial. Additionally, an examination of the record does not disclose that the violation caused Mars any harm, either in his defense to the pending federal charge or to his status in the state prison system. Mars has failed to demonstrate that the transfers between state and federal custody caused him any actual prejudice.

Therefore, we join the view of our brothers in the second, eighth, and ninth circuits that in instances similar to the present case, IAD claims are not cognizable under a motion for § 2255 relief. *See Huff v. United States*, 599 F.2d 860 (8th Cir. 1979); *Hitchcock v. United States*, 580 F.2d 964 (9th Cir. 1978); *Edwards v. United States*, 564 F.2d 652 (2d Cir. 1977).[9]

▆ There exists an alternative basis upon which to affirm the judgment of the district court. In *United States v. Eaddy*, 595 F.2d 341, 346 (6th Cir. 1979) this court held that "prisoner rights created by the Agreement [IAD] are waived by forfeiture or default if not raised prior to or during trial." In the present case appellant waived any claim for relief he may have had under the IAD through his failure to raise his IAD claim "prior to or during trial." As we stated in *Eaddy*, "[t]o allow a prisoner to assert violations of the Agreement beyond the trial stage, without a showing of cause, would 'encourage piecemeal litigation of claims of error . . . and undercut the policy of achieving prompt and final judgments.'" 595 F.2d at 346 (citations omitted).

The remaining issue to be decided concerns the retroactivity of the Supreme Court decision in *United States v. Mauro*, 436 U.S. 340, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978). As stated above, unless we accord retroactive application to the *Mauro* decision no violation of the IAD occurred in the present case. In light of our conclusions that appellant has waived any IAD claim he may have had and that § 2255 is not an appropriate vehicle to raise appellant's IAD claim, we need not decide today whether *Mauro* should receive retroactive application.[10]

Accordingly, the judgment of the district court is affirmed.

9. Appellant argues that since this court has granted relief to a state prisoner under 28 U.S.C. § 2254 for a violation of the IAD in *Stroble v. Anderson*, 587 F.2d 830 (6th Cir. 1978), *cert. denied*, 440 U.S. 940, 99 S.Ct. 1289, 59 L.Ed.2d 499 (1979), we should accord appellant the same relief under § 2255. In *Stroble* this court was not presented with the issue of cognizability of IAD violations under § 2254 nor did we decide that issue. Therefore, we find the *Stroble* decision not dispositive of the scope of § 2254 or § 2255 relief.

At this point we add the following caveat. Our decision today does not foreclose § 2255 relief for governmental violations of the IAD in instances where petitioner can show he was actually prejudiced by the violations or that his IAD rights properly asserted before the trial court were not properly vindicated.

10. Our research has disclosed only one case discussing this issue. In *Brown v. Mitchell*, 598 F.2d 835 (4th Cir. 1979) the fourth circuit refused to apply *United States v. Mauro* retroactively. For a discussion of retroactivity in this area *see Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971); *Linkletter v. Walker*, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965); *Stoval v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). *See also United States v. Calandrella*, 605 F.2d 236 (6th Cir. 1979).

EDWARDS, Chief Judge, dissenting.

Respectfully I dissent. I cannot join in holding that a violation of the Interstate Agreement on Detainers Act for which Congress provided the sanction of dismissal of the indictment with prejudice is not cognizable in habeas corpus. The Supreme Court has squarely held in *United States v. Mauro*, 436 U.S. 340, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978) that the IAD is a federal law. The IAD provision which was admittedly violated here provides:

> "(e) If trial is not had on any indictment, information, or complaint contemplated hereby prior to the prisoner's being returned to the original place of imprisonment pursuant to article V(e), hereof, such indictment, information, or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice."

Since the provision just quoted served to deprive the federal district court of all jurisdiction over Mars' trial, the defect in this record could hardly be more "fundamental."

In *United States v. Stroble*, 587 F.2d 830 (6th Cir. 1978), *cert. denied*, 440 U.S. 940, 99 S.Ct. 1289, 59 L.Ed.2d 499 (1979), this court granted a writ of habeas corpus under § 2254 because of violation of Art. IV(e) of the Interstate Agreement on Detainers Act. In *Stroble*, we followed the specific interpretation of Art. IV(e) of the IAD which the United States Supreme Court had adopted in *United States v. Mauro, supra*:

> In *United States v. Mauro*, 436 U.S. 340, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978) the Supreme Court has defined the purpose of article IV and traced the role of the United States in adopting it.

The Joint Committee on Detainers was later reconstituted under the auspices of the Council of State Governments. Then known as the Committee on Detainers and Sentencing and Release of Persons Accused of Multiple Offenses, it held meetings in 1955 and 1956, which resulted in the development and approval of several proposals concerning detainers. Among the proposals was a draft version of the Agreement. In April 1956 this proposal was reviewed and approved by a conference jointly sponsored by the American Correctional Association, the Council of State Governments, the National Probation and Parole Association, and the New York Joint Legislative Committee on Interstate Cooperation.[17] Fol-

[17] Among the 60 persons in attendance at the conference were representatives of the United States Department of Justice.

lowing the endorsement of the Agreement by this conference, the Council of State Governments included it within its Suggested State Legislation Program for 1957.

The Agreement, in the form adopted by the United States and other member jurisdictions, sets forth the findings upon which it is based and its purpose in Art. I. It notes that "charges outstanding against a prisoner, detainers based on untried indictments, informations, or complaints and difficulties in securing speedy trial of persons already incarcerated in other jurisdictions, produce uncertainties which obstruct programs of prisoner treatment and rehabilitation." Accordingly, its purpose is to encourage the expeditious disposition of such charges and to provide cooperative procedures among member States to facilitate such disposition.

The central provisions of the Agreement are Art. III and Art. IV. Article III provides a procedure by which a prisoner against whom a detainer has been filed can demand a speedy disposition of the charges giving rise to the detainer. The warden of the institution in which the prisoner is incarcerated is required to inform him promptly of the source and contents of any detainer lodged against him and of his right to request final disposition of the charges. Art. III(c). If the prisoner does make such a request, the jurisdiction that filed the detainer must bring him to trial within 180 days.[18]

[18] For good cause shown in open court, with either the prisoner or his counsel present, the court having jurisdiction over the matter may grant any necessary or reasonable continuance.

Art. III(a). The prisoner's request operates as a request for the final disposition of all untried charges underlying detainers filed against him by that State, Art. III(d), and is deemed to be a waiver of extradition. Art. III(e).

Article IV provides the means by which a prosecutor who has lodged a detainer against a prisoner in another State can secure the prisoner's presence for disposition of the outstanding charges. Once he has filed a detainer against the prisoner, the prosecutor can have him made available by presenting to the officials of the State in which the prisoner is incarcerated "a written request for temporary custody or availability . . . ."[19] Art. IV(a).

[19] Article IV(a) states:

"The appropriate officer of the jurisdiction in which an untried indictment, information, or complaint is pending shall be entitled to have a prisoner against whom he has lodged a detainer and who is serving a term of imprisonment in any party State made available in accordance with article V(a) hereof upon presentation of a written request for temporary custody or availability to the appropriate authorities of the State in which the prisoner is incarcerated:

*Provided*, That the court having jurisdiction of such indictment, information, or complaint shall have duly approved, recorded, and transmitted the request: *And provided further*, That there shall be a period of thirty days after receipt by the appropriate authorities before the request be honored, within which period the Governor of the sending State may disapprove the request for temporary custody or availability, either upon his own motion or upon motion of the prisoner." *United States v. Mauro, supra* [, 98 S.Ct.] at 1842–43.

Two important limitations, previously referred to, are placed on a prosecuting authority once it has obtained the presence of a prisoner pursuant to Art. IV. Art. IV(c) states that

"[i]n respect of any proceeding made possible by this article, trial shall be commenced within one hundred and twenty days of the arrival of the prisoner in the receiving State, but for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance."

And Art. IV(e) requires the receiving State to try the prisoner on the outstanding charge before returning him to the State in which he was previously imprisoned:

"If trial is not had on any indictment, information, or complaint contemplated hereby prior to the prisoner's being returned to the original place of imprisonment pursuant to article V(e) hereof, such indictment, information, or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice."

Article V(c) similarly provides that the "indictment, information, or complaint on the basis of which the detainer has been lodged" shall be dismissed if the prisoner is not brought to trial within the period specified in Art. IV(c).

*Thus Art. IV is unequivocal in its language and so is the interpretation and application of it by the United States Supreme Court.* (Emphasis added). 587 F.2d at 836–838.

The sanction of dismissal of the indictment provided in Art. IV for failure of the receiving party to the compact to try the prisoner within 120 days is the same sanction applicable here where the government failed to try him before returning him to the state.

It is clear to me that the same identical sanction was and is required in relation to this case as was required of this court in *Stroble*.

The majority opinion, however, holds that this clear violation of the Interstate Agreement on Detainers Act "is not cognizable under . . . § 2255" because "the violation of the IAD protection asserted by Mars . . . falls far short of a 'fundamental defect'" . . . and that "the present case does not involve . . . any doubt that the trial court possessed jurisdiction over the appellant and the crime involved" and that "the record does not disclose that the violation caused Mars any harm."

In fact, however, Mars is serving a 10-year federal prison term after conviction on an indictment as to which federal law in the Interstate Agreement on Detainers Act had specifically required under the admitted facts in this record that "such indictment . . . shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice."

As this court recognized in *Stroble, supra*:

the stringent enforcement sanction of Article V(c) ("dismissal of the indictment with prejudice") requires no showing of prejudice.

When 46 states, the District of Columbia, and the United States Government, acting through Congress and the President, entered into the I.A.D., each of the 48 participants yielded some small measure of its sovereignty. The Agreement was written with meticulous care. It even anticipated the possibility that its terms might have harsh effects if employed by state officials who were ignorant of its terms. The Agreement specifically provided:

"Each State party to this agreement shall designate an officer who, acting jointly with like officers of other party States, shall promulgate rules and regulations to carry out more effectively the terms and provisions of this agreement, and who shall provide, within and without the State, information necessary to the effective operation of this agreement." Art. VII.

The Agreement also provided in Article IX, "This agreement shall be liberally construed so as to effectuate its purposes." 587 F.2d at 839–840.

There can be no doubt that this court squarely found in *Stroble* that a violation of the IAD which triggered the sanction of dismissal of the indictment "with prejudice" was a violation of federal law and that we took cognizance in a habeas corpus action.

Further, no Supreme Court case relied upon by the majority opinion serves to support the result reached therein. In *United States v. Timmreck*, 441 U.S. 780, 99 S.Ct. 2085, 60 L.Ed.2d 634 (1979), the Supreme Court held that failure to comply in exact detail with Rule 11 of the Federal Rules of Criminal Procedure, was not cognizable in habeas corpus. In *Timmreck*, the defendant was warned of the possible sentence but not of an additional mandatory three-year parole term. The *Timmreck* failure was a minor violation of a procedural rule. It is, of course, a far cry from a violation of law which the U.S. Congress has judged serious enough to warrant a statutory declaration that the indictment must be dismissed with prejudice.

Cognizability under § 2255 was thoroughly analyzed by Mr. Justice Stewart in his opinion for the court in *Davis v. United States*, 417 U.S. 333, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974):

the Solicitor General contends that we should affirm the judgment of the Court of Appeals because the petitioner's claim is not "of constitutional dimension" (Brief for United States 34) and thus is not cognizable in a § 2255 collateral proceeding. At the outset, we note that the Government's position finds scant support in the text of § 2255, which permits a federal prisoner to assert a claim that his confinement is "in violation of the Constitution *or laws* of the United States." (Emphasis added.)

It is argued forcefully in a dissenting opinion today that this language, which appears in the first paragraph of § 2255, is somehow qualified by the third paragraph of the statute, which provides:

"If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment side and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate."

The dissent of Mr. Justice REHNQUIST rejects any suggestion that the language concerning "sentence[s] . . . otherwise open to collateral attack" can encompass a claim that a confinement under that sentence violates the "laws of the United States," contending that this would reduce the remaining language regarding "a denial or infringement of constitutional rights" to surplusage. Indeed, the nub of the dissent is that § 2255 "does not speak of an illegal 'confinement' . . . or even of an illegal *conviction*, but rather of illegal *sentences.*" *Post*, at 356. (Emphasis in original.) Although this microscopic analysis of § 2255 surely shows that the statutory language is somewhat lacking in precision, the resulting shadow that the dissenting opinion would cast over the statute totally disappears in the light of its legislative history.

That history makes clear that § 2255 was intended to afford federal prisoners a remedy identical in scope to federal habeas corpus. As the Court pointed out in *United States v. Hayman*, 342 U.S. 205, 219, 72 S.Ct. [263], 273, 96 L.Ed. 232 (1952), the "history of Section 2255 shows that it was passed at the instance of the Judicial Conference to meet practical difficulties that had arisen in administering the habeas corpus jurisdiction of the federal courts. Nowhere in the history of Section 2255 do we find any purpose to impinge upon prisoners' rights of collateral attack upon their convictions. On the contrary, the sole purpose was to minimize the difficulties encountered in habeas corpus hearings by affording the same rights in another and more convenient forum." Thus, there can be no doubt that the grounds for relief under § 2255 are equivalent to those encompassed by § 2254, the general federal habeas corpus statute, under which relief is available on

the ground that "[a person] is in custody in violation of the Constitution *or laws* or treaties of the United States." (Emphasis added.) Furthermore, although the dissent of Mr. Justice REHNQUIST derides the view that the words "otherwise open to collateral attack" are intended to be "a catch-all phrase," *post*, at 358, the legislative history fully supports that view. In recommending to Congress what eventually became § 2255, the Judicial Conference Committee on Habeas Corpus Procedure state that "[t]he motion remedy broadly covers all situations where the sentence is 'open to collateral attack.' As a remedy, it is intended to be as broad as habeas corpus."

No microscopic reading of § 2255 can escape either the clear and simple language of § 2254 authorizing habeas corpus relief "on the ground that [the prisoner] is in custody in violation of the . . . laws . . . of the United States" or the unambiguous legislative history showing that § 2255 was intended to mirror § 2254 in operative effect.

*Id.* at 342–344, 94 S.Ct. at 2303.[1]

I recognize that one post *Mauro* case from the Eighth Circuit does support the position taken by the opinion prepared for this court. *See Huff v. United States*, 599 F.2d 860, 862–63 (8th Cir. 1979).[2] In addition there is dicta which lends support to the opinion drafted for our panel. The Second Circuit's opinion in *Edwards v. United States*, 564 F.2d 652 (2nd Cir. 1977), however, is not authority for our present case since it was decided prior to the now controlling case of *United States v. Mauro, supra.*

*United States v. Stroble, supra,* is the only Sixth Circuit case directly on point. I can find no basis for overruling it sub silentio or otherwise.

---

1. *See also Kaufman v. United States*, 394 U.S. 217, 89 S.Ct. 1068, 22 L.Ed.2d 227 (1969).

2. In *Hitchcock v. United States*, 580 F.2d 964 (9th Cir. 1978), the Ninth Circuit found that the plaintiff's claims were not cognizable under § 2255 where "Pursuant to a writ of habeas corpus ad prosequendum, he was taken from state prison on July 12 and brought before a

Magistrate in connection with those [federal income tax] charges. Thereafter, he was returned to state custody to await trial." Our instant case does not deal with any such brief removal from state custody for the purpose of appearance in a federal court and prompt return to state custody.

The third issue posed by this case concerns whether or not *United States v. Mauro* should be given retroactive effect. When and if that issue is presented in a proper case, I am presently inclined to agree with the holding of the Fourth Circuit that *United States v. Mauro* should not be applied retroactively to cases which have become final prior to *Mauro. See Brown v. Mitchell*, 598 F.2d 835, 837–38 (4th Cir. 1979).

In view, however, of the fact that our current case was in the appellate process when *United States v. Mauro, supra,* was decided, I would delay decision on the retroactivity issue until we are presented with a case which had been initiated and completed before *Mauro* was decided.

For the reasons stated above the writ should issue.

### ORDER.

Before EDWARDS, Chief Judge, CELEBREZZE and MERRITT, Circuit Judges.

Plaintiff-appellant's petition for rehearing having come on to be considered and of the judges of this Court who are in regular active service less than a majority having favored ordering consideration en banc, the petition has been referred to the panel which heard the appeal, and it further appearing that the petition for rehearing presents no issues which were not considered by the panel and with Chief Judge Edwards adhereing to his dissent.

IT IS ORDERED that the petition for rehearing be and it hereby is denied.