UNITED STATES of America, Appellee,

v.

Luis E. CHICO and Gail A. Colello, Appellants.

No. 939, Docket 77-1016.

United States Court of Appeals, Second Circuit.

Argued March 31, 1977.

Decided June 20, 1977.

Peter D. Goldberger, Asst. Public Defender, New Haven, Conn., for appellants.

Thomas P. Smith, Asst. U. S. Atty., New Haven, Conn. (Peter C. Dorsey, U. S. Atty., D. Conn., George J. Kelly, Jr., Asst. U. S. Atty., New Haven, Conn., of counsel), for appellee.

Before LUMBARD, MANSFIELD and GURFEIN, Circuit Judges.

MANSFIELD, Circuit Judge:

Luis E. Chico and Gail A. Colello appeal from an order entered by Chief Judge T. Emmet Clarie of the United States District Court of Connecticut, which denied their petition pursuant to 28 U.S.C. § 2255 to vacate their convictions and dismiss probation violation proceedings brought against them. Relying on our decision in *United States v. Mauro*, 544 F.2d 588 (2d Cir. 1976), appellants claim that the government violated Article IV(e) of the Interstate Agreement on Detainers Act, 18 U.S.C. App. § 2 ("the Act").[1] We affirm.

In an indictment filed by a federal grand jury in Hartford, Connecticut, on October 10, 1972, appellants were charged in four counts with bank larceny and embezzlement in violation of 18 U.S.C. §§ 2113(b), 656. At that time both Chico and Colello were confined in Connecticut state prisons as a result of state felony convictions.

On November 20, 1972, Chico and Colello were brought to the United States District Court for arraignment pursuant to writs of habeas corpus ad prosequendum, 28 U.S.C. § 2241(c)(5). Later that day, after completion of the district court proceedings, they were returned to the same state prisons from which they had been taken. The same procedure was followed when Colello pleaded guilty to one count of the indictment on December 4, 1972, when she was sentenced on February 5, 1973, when Chico pleaded guilty on February 27, 1973, and when he was sentenced on June 25, 1973. In none of these instances were appellants imprisoned during the few hours of federal custody. In each instance the appellant involved was promptly returned to the same state prison where he or she had been continuously confined since April, 1972.

On October 6, 1976, after appellants had been released from state custody and were subject to the terms of federal probation, warrants against them were issued charging violations of probation. On December

6, 1976, a hearing was held before Judge Clarie in Hartford at which time they raised the claim that in 1972 and 1973 the government had violated Article IV(e) of the Act by returning them to state prison after federal pretrial proceedings but without completing a trial on the pending charges, and that their convictions and probationary sentences were therefore void under the provisions of the Act. Judge Clarie denied the motion to vacate the convictions and sentences, and subsequently extended their probation terms based on violations of its conditions. This appeal followed.

The sole issue in this case is whether Article IV(e) must be interpreted as requiring that, where the United States obtains custody of a state prisoner pursuant to a writ of habeas corpus for a short, discrete appearance in a federal criminal proceedings against him and returns him on the same day to the same state institution whence he was taken instead of holding him in another place of imprisonment until trial of the federal charges is completed, the indictment against him must be dismissed. Appellants contend that Article IV(e) requires dismissal of the federal indictment. We disagree.

In *United States v. Ford*, 550 F.2d 732, 736 (2d Cir. 1977), we thoroughly reviewed the background and legislative history of the Interstate Agreement on Detainers Act, concluding that the Act is designed to protect prisoners and programs for their rehabilitation in two ways. First, it seeks to eliminate the uncertainties created by charges pending in another jurisdiction against a prisoner, which threaten to obstruct rehabilitation of the prisoner in the institution of the sending state, by requiring prompt disposition of those charges so that the period during which the pending charges may have an adverse effect on the prisoner's ability or desire to participate in rehabilitative programs will be minimized. *United States v. Mauro, supra*, 544 F.2d at

---

1. Article IV(e) provides in pertinent part that "If trial is not had on any indictment . . . prior to the prisoner's being returned to the original place of imprisonment . . . such

indictment . . . shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice."

592–93. Secondly, the Act is designed to "insure that interruptions of the sending jurisdiction's incarceration are minimized" so that the prisoner's continuous physical presence in rehabilitative programs at the state institution from which he is removed to face charges elsewhere, will be maximized. *United States ex rel. Esola v. Groomes*, 520 F.2d 830, 834 (3d Cir. 1975). Thus Article IV(c) of the Agreement requires that, where the prisoner against whom a detainer is lodged is removed to another jurisdiction at its request to face pending charges, he must be brought to trial within 120 days. Article IV(e), in turn, provides that if the pending charges against the prisoner in the receiving jurisdiction are not tried before his return to "the original place of imprisonment" they must be dismissed. In this way both excessively long detention of a prisoner by the receiving state and "the shuttling of prisoners back and forth between penal institutions of the jurisdictions" are avoided. *United States v. Mauro, supra,* 544 F.2d at 593.

In *Mauro* we held that these provisions of the Act required dismissal of federal charges against a state prisoner who had been removed to a federal prison pursuant to a federal writ of habeas corpus to face the charges and then returned to the state prison without trial. A majority of the panel, with the present writer dissenting, reasoned that the Act applied to the United States as both a sending and receiving state[2] and that the writ qualified as a "detainer" and a "request" as those terms are used in Article IV.

The present case is clearly distinguishable in significant respects from *Mauro* and *Ford* since, whether or not a federal writ is classified as a "detainer,"[3] the prisoners here were never imprisoned by the federal government, which was the receiving state.[4] Nor were their continuous physical presence or their rehabilitative programs at the sending state's penal institutions interrupted by any other imprisonment. They were merely removed for a few hours at a time and immediately returned. For purposes of the Act, the situation is the same as if they had remained continuously in state prisons. Cf. *United States v. Sorrell*, 413 F.Supp. 138 (E.D.Pa.1976); *United States v. Kenaan*, 422 F.Supp. 226 (D.Mass.1976). It cannot be said that after being removed to face federal charges each was "returned to the *original* place of imprisonment" (emphasis added), as that term is used in Article IV(e), since it necessarily implies removal to *another* place of imprisonment in the receiving state. Moreover, unlike the situations in *Mauro* and *Ford*, the speedy trial objectives of the Act were fully satisfied in the present case, since appellants entered guilty pleas well within 120 days following their removal to face the federal charges.[5]

For these reasons we hold that Article IV(e) of the Act does not apply to a case where a prisoner is removed from the prison of a state for a few hours to be arraigned, plead and be sentenced in the federal court without ever being held at any place of imprisonment other than that of the sending state and without interruption of his rehabilitation there.[6]

The order of the district court is accordingly affirmed.

---

**2.** Connecticut, the sending state, has joined in the Interstate Agreement on Detainers, Conn. Gen. Stat. §§ 54–186 to 54–192.

**3.** In this connection see *United States v. Ricketson*, 498 F.2d 367, 373 (7th Cir.), *cert. denied*, 419 U.S. 965, 95 S.Ct. 227, 42 L.Ed.2d 180 (1974); *United States v. Scallion* (5th Cir. 1977) (*en banc*).

**4.** "State" is defined to include the United States in Article II(a) of the Act.

**5.** In *Mauro* and *Ford* both objectives of the Act were frustrated since federal detainers were permitted to be lodged for an unreasonable period of time, and the prisoners were incarcerated by the receiving state (the federal government) and returned to the sender state prior to a trial of the pending charges.

**6.** In view of our disposition of this case, we do not reach the government's contentions that appellants waived their right to relief under the Agreement by not raising it prior to pleading guilty and that such relief is not available under the Agreement by seeking a writ pursuant to 28 U.S.C. § 2255.