UNITED STATES of America,
Appellant,

v.

David LAWSON, Defendant-Appellee.

No. 989, Docket 83–1429.

United States Court of Appeals,
Second Circuit.

Argued March 27, 1984.

Decided May 31, 1984.

Kathleen M. Mehltretter, Asst. U.S. Atty., Buffalo, N.Y. (Salvatore R. Martoche, U.S. Atty., W.D.N.Y., Buffalo, N.Y., on the brief), for appellant.

Patrick J. Quinlivan, Buffalo, N.Y. (Kevin M. Dillon, Buffalo, N.Y., on the brief), for defendant-appellee.

Before KAUFMAN, KEARSE and PIERCE, Circuit Judges.

KEARSE, Circuit Judge:

The United States appeals from a judgment of the United States District Court

for the Western District of New York, John T. Elfvin, *Judge,* dismissing the indictment against defendant David Lawson on the ground that, by transferring Lawson—then a state prisoner—back and forth between state and federal custody numerous times before Lawson was tried on federal charges, the government violated Lawson's rights under the Interstate Agreement on Detainers Act ("IAD"), 18 U.S.C. App. pp. 545–48 (1982). The government concedes that the retransfers to state custody violated the IAD, but it argues that Lawson waived his right to assert such a claim. The district court, in a thorough opinion dated April 29, 1983 ("D. Ct. Opinion"), ruled that since Lawson had not "knowingly and intelligently" relinquished his rights, there had been no waiver. Although we apply a different standard, we agree that there was no waiver and we affirm the judgment.

## I. BACKGROUND

In May 1980, Lawson was indicted on three counts of bank robbery, in violation of 18 U.S.C. §§ 2113(a), (b), and (d) (1976). At the time, Lawson was serving a sentence in a New York State prison on a state robbery conviction, and on June 2, the government filed a detainer against him. Thereafter, Lawson was transferred to federal custody seven times, and returned to state custody each time, before he was brought to trial on the federal bank robbery charges.

Following this shuttling, Lawson was tried and convicted in the district court. He successfully appealed his conviction, however, and his case was remanded for a new trial. *See United States v. Lawson,* 683 F.2d 688 (2d Cir.1982). Prior to his new trial, Lawson moved to dismiss the indictment on the ground, asserted for the first time, that the earlier transfers of custody had violated his rights under Article IV(e) of the IAD. Article IV(e) provides that once a prisoner is transferred to a jurisdiction that has filed both a detainer and a written request for temporary custody, if he is not tried in the new jurisdiction prior to his return to the original jurisdiction, the charges underlying the detainer must be dismissed:

> If trial is not had on any indictment, information, or complaint ... [underlying the detainer] prior to the prisoner's being returned to the original place of imprisonment ..., such indictment, information, or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice.

18 U.S.C. App. p. 546. The government argued, *inter alia,* that Lawson had waived his IAD rights either (1) by failing to assert them prior to his first trial or on appeal, or (2) by having requested to be returned to state custody after his transfers to federal custody.

After finding that Article IV(e) had been violated, the district court ruled, for the reasons discussed in Part II.A. of this opinion, that Lawson's IAD rights had not been waived for failure to file a motion at an earlier time. Then, analyzing certain of this Court's decisions as requiring application of the constitutional standard of waiver set forth in *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938), the court considered whether there had been a knowing and intelligent waiver, and found there had not. The court found that although some of Lawson's transfers to federal custody had resulted from his numerous requests for assignment of new counsel to represent him, on no occasion did Lawson ask to be returned to state custody. The court pointed out that although the government had had ample time to augment the record, it had presented no evidence that Lawson ever instigated his return to state custody or even knew of his rights under the IAD. Pursuant to the mandate of Article IV(e), therefore, the court dismissed the indictment.

This appeal followed.

## II. DISCUSSION

The government concedes that Article IV(e) of the IAD was violated in this case, and hence the only issues on this appeal

are (1) whether Lawson's failure to raise his IAD claim prior to his first trial or on appeal bars him from raising the claim following the remand for a new trial, and (2) if not, whether Lawson waived his IAD claim by reason of his actions relating to his transfers between jurisdictions before his first trial began. We conclude that both questions are properly answered in the negative.

## A. *The Effect of the Order for a New Trial*

■ The first question need not detain us long—notwithstanding the requirement of Fed.R.Crim.P. 12(b) that motions challenging the institution of the prosecution, on a basis other than an absence of the court's jurisdiction or the failure of the indictment to charge an offense, must be made before trial, and the provision of Rule 12(f) that the failure to make prior to trial a motion that is required to be made prior to trial constitutes waiver. Had there been no reversal of Lawson's conviction, the effect of these rules would have been to bar any assertion of his IAD rights. It has long been established, however, that when a judgment has been reversed and the case remanded for a new trial, the effect is to nullify the judgment entirely and place the parties in the position of no trial having taken place. In *United States v. Ayres*, 76 U.S. (9 Wall.) 608, 19 L.Ed. 625 (1869), in dismissing an appeal from a judgment that had been followed by an order for a new trial, the Supreme Court stated as follows:

> [I]t is quite clear, that the order granting the new trial has the effect of vacating the former judgment, and to render it null and void, and the parties are left in the same situation as if no trial had ever taken place in the cause. This is the legal effect of the new trial by a court competent to grant it.

*Id.* at 610, 19 L.Ed. 625.

In accordance with this principle, after a conviction has been reversed on appeal and the case remanded for a new trial, the government has been permitted to add to the original indictment, *see United States*

*v. Ragano*, 520 F.2d 1191, 1199 (5th Cir. 1975), *cert. denied*, 427 U.S. 905, 96 S.Ct. 3192, 49 L.Ed.2d 1199 (1976), and to use evidence not offered at the first trial, *see United States v. Paroutian*, 319 F.2d 661, 663 (2d Cir.1963); and a defendant has been permitted to raise issues not raised at the first trial, *see United States v. Cox*, 432 F.2d 1326, 1327 (D.C.Cir.1970), and to make a new pretrial motion to suppress evidence, *see United States v. Romano*, 241 F.Supp. 933, 936 (D.Me.1965), *vacated on other grounds*, 356 F.2d 310 (1st Cir.1966).

■ In the present case, Lawson's conviction was reversed by this Court and the matter was remanded for a new trial. Since the effect of this decision was to place "the parties ... in the same situation as if no trial had ever taken place," *United States v. Ayres, supra*, 76 U.S. (9 Wall.) at 610, any motion made by Lawson on remand prior to the retrial must be treated as a motion prior to trial. Since his motion to dismiss on IAD grounds was made prior to his retrial, it was timely under Rule 12.

## B. *The Standard for Waiver of an IAD Right*

We turn, therefore, to the matter of whether Lawson had waived his right to assert IAD violations by his conduct during the period in which he was transferred back and forth between state and federal custody. The questions are the proper standard to be applied in determining whether a waiver occurred and, under that standard, whether Lawson waived his IAD rights.

■ As the district court recognized, the rights at issue here are statutory rights, not rights granted by the Constitution, and " '[a]lmost without exception, the requirement of a knowing and intelligent waiver has been applied only to those rights which the Constitution guarantees to a criminal defendant in order to preserve a fair trial.' " D.Ct. Opinion at 17 (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 237, 93 S.Ct. 2041, 2052, 36 L.Ed.2d 854 (1973)). Accordingly most of the courts of appeals that have considered the question

of waiver under the IAD have concluded that a defendant need not know his or her rights under the statute in order to waive its protections. *See, e.g., United States v. Odom,* 674 F.2d 228, 230 (4th Cir.), *cert denied,* 457 U.S. 1125, 102 S.Ct. 2946, 75 L.Ed.2d 1341 (1982); *United States v. Black,* 609 F.2d 1330, 1334 (9th Cir.1979), *cert. denied,* 449 U.S. 847, 101 S.Ct. 132, 66 L.Ed.2d 56 (1980); *Gray v. Benson,* 608 F.2d 825, 826–27 (10th Cir.1979); *United States v. Eaddy,* 595 F.2d 341, 344 (6th Cir.1979); *Camp v. United States,* 587 F.2d 397, 400 (8th Cir.1978).

In concluding that the standard applied in this Circuit was that a waiver of an IAD right must be knowing and intelligent to be effective, the district court looked to our decisions in *United States v. Mauro,* 544 F.2d 588 (2d Cir.1976) (*"Mauro"*), *rev'd on other grounds,* 436 U.S. 340, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978); *United States v. Ford,* 550 F.2d 732 (2d Cir.1977), *aff'd sub nom. United States v. Mauro,* 436 U.S. 340, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978); and *United States v. Cyphers,* 556 F.2d 630 (2d Cir.), *cert. denied,* 431 U.S. 972, 97 S.Ct. 2937, 53 L.Ed.2d 1070 (1977). While there is dictum in our opinion in *Mauro* to support the conclusion that the constitutional standard of waiver was applied in that case, we do not believe that conclusion is compelled and we do not believe the constitutional standard is the proper one.

In *Mauro,* the defendants had been transferred from state custody pursuant to writs of habeas corpus *ad prosequendum* so that they could be arraigned. After arraignment they were returned to state custody, and they thereafter moved to dismiss the federal indictment on the ground that Article IV(e) of the IAD had been violated. The government argued that one of the defendants, Fusco, had waived his IAD right because, following the arraignment, he had requested that he be returned to state prison. The *Mauro* panel refused to consider this request a waiver because just prior to Fusco's request another defendant had requested that he be allowed to remain in federal custody and that request had been denied because of over-

crowding in the federal facility. Noting that "[i]n light of this, it would have been futile for Fusco to make the same request before the same judge," 544 F.2d at 591 n. 3, the panel apparently concluded that Fusco's request was not a factor in his return to state custody. The panel went on to say, "[m]oreover, for it to have been effective as a waiver it must have been an 'intentional relinquishment or abandonment of a known right or privilege.'" *Id.* (quoting *Johnson v. Zerbst, supra,* 304 U.S. at 464, 58 S.Ct. at 1023). Since this statement was not necessary to the conclusion, apparently already reached, that the request was not a waiver, it is not clear to us that the *Mauro* panel's invocation of the constitutional standard was more than dictum.

Nor do we regard our cases after *Mauro* as applying a constitutional standard to the question of waiver of IAD rights. In *United States v. Ford,* we held that a prisoner who had been retransferred to state custody as a result of his own request for such a retransfer had waived his right to assert a violation of Article IV(e). We expressly declined to "decide whether the failure of a prisoner to express a preference as to the place of his incarceration pending trial, either through ignorance of his statutory right or otherwise, would nevertheless constitute a waiver of that right." 550 F.2d at 742 n. 29. *Ford* did not cite *Mauro* with respect to the standard to be applied, and we do not view *Ford* as requiring that a waiver be knowing and intelligent. *Accord United States v. Black, supra,* 609 F.2d at 1334.

In *Cyphers,* we allowed a defendant, Ferro, to raise his IAD claim for the first time in a supplemental brief on appeal because the record initially had not indicated that a detainer had been lodged against him, and he apparently had been unaware prior to trial that a detainer had been lodged. The *Cyphers* panel noted that Article IX of the IAD provides that the IAD "shall be liberally construed so as to effectuate its purposes," 556 F.2d at 635, and stated that Rule 12(f)'s strict construction of any failure to make a timely Rule 12(b) motion as a

waiver was not dispositive in construing the statute, *id.* at 634. Thus, the panel ruled that where the defendant apparently neither knew nor had any basis for knowing that a detainer had been filed, he would be allowed to invoke Article IV(e) for the first time on appeal. The panel did not elaborate, and it is not clear whether it (1) construed Article IV(e) "so as to render an Article IV(e) claim not subject to waiver," *id.* at 637 (Timbers, *J.*, dissenting), (2) construed Article IV(e) liberally to permit no waiver unless the existence of the detainer was known, or (3) elected pursuant to Rule 12(f) to "grant relief from the waiver" "for good cause shown." The second interpretation seems to us most appropriate. That construction would require knowledge of or reason to know the basic fact that gives rise to the IAD right. We do not believe, however, that the panel meant to imply that a waiver could have been found only if Ferro was both aware of the detainer and fully apprised of the nature of his IAD rights. In short, we do not read *Cyphers*, which cited neither *Mauro* nor *Johnson v. Zerbst*, as resting on the application of a "knowing and intelligent" standard.

Finally, in *United States v. Scheer*, 729 F.2d 164 (2d Cir.1984), which involved a waiver under Article IV(a), rather than IV(e), we noted that "[t]he [IAD] sets forth statutory rules relating to procedures to be followed in prisoner transfer. But these procedural rules are not rights guaranteed by the Constitution .... [and] a defendant may waive the time limitations imposed under [the IAD]." *Id.* at 170. In support of the proposition that IAD rights may be waived, the *Scheer* panel did not cite *Mauro;* rather it cited *Ford*, which was noncommittal as to the proper standard for determining waiver, and it cited *United States v. Odom, supra; United States v. Black, supra; United States v. Eaddy, supra;* and *United States v. Camp, supra*, all of which applied the nonconstitutional standard. In sum, we view the prior decisions of this Court as consistent with the application of a nonconstitutional standard for waiver under the IAD.

Nor do we believe that use of the constitutional standard would be warranted. As the Supreme Court pointed out in *Schneckloth v. Bustamone, supra,* the "knowing and · intelligent" standard of *Johnson v. Zerbst* has not been applied even to all constitutional rights, but only to those that guarantee the defendant a fair trial and protect the reliability of the truth-determining process. 412 U.S. at 236–42, 93 S.Ct. at 2052, 2055. Here, the statutory right conferred by Article IV(e) of the IAD has little to do with the fairness of the defendant's trial or the reliability of the truth-seeking process. The principal goals of Congress in enacting the IAD were to facilitate the appropriate sentencing of the defendant and to enhance the possibilities of his rehabilitation by causing the prompt resolution of outstanding charges against him. The pendency of such charges often caused the sentencing judge uncertainty in how to take into account other pending charges, and later often interfered with the fixing of the defendant's parole date, with his potential assignment to work and other rehabilitative programs, and with his own attitude toward rehabilitation. *See, e.g., United States v. Ford, supra,* 550 F.2d at 737–40; *United States v. Cyphers, supra,* 556 F.2d at 635 ("The main purpose of the Act is to provide means for expeditious resolution of all outstanding charges which may affect the conditions or duration of imprisonment and treatment."). These concerns are not of the truth-seeking type that would normally prompt application of the constitutional standard for waiver,[1] and we conclude that the "knowing and intelligent" standard is not the proper test for determining whether or not there has been a waiver of a right under Article IV(e) of the IAD.

---

**1.** While the IAD also seeks to assure the defendant an early trial on outstanding charges, and thereby to preserve his ability to prepare a defense before evidence favorable to him becomes dispersed, *United States v. Ford, supra,* 550 F.2d at 740, Article IV(e) is not concerned with the timing of trial.

■ This conclusion does not, however, require us to reach a different result from that reached by the district court in the present case, since there was no evidence that Lawson ever intended to relinquish his IAD rights or that he took any action that was, expressly or impliedly, inconsistent with the provisions of the IAD. *See United States v. Odom, supra,* 674 F.2d at 230; *United States v. Eaddy, supra,* 595 F.2d at 344. Thus although Lawson repeatedly requested the assignment of new counsel to represent him in the pending federal case, and these requests occasioned certain of his transfers from state to federal custody, the court found that "there is no evidence in the present record that Lawson ever requested to be returned to state custody . . . ." D.Ct. Opinion at 32. This finding is sufficient in the circumstances of this case to support a conclusion under the non-constitutional standard that no waiver occurred.

We have considered the government's other arguments and find them to be without merit.

## CONCLUSION

The judgment of the district court dismissing the indictment is affirmed.